UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

**SEIKO EPSON CORPORATION**,
a Japan corporation; **EPSON AMERICA, INC**., a
California corporation; and **EPSON PORTLAND
INC**., an Oregon corporation,

       *Plaintiffs*,

   v.

**WESTON TEES LLC**, a Texas limited liability
company dba Texas Tees; **WESTON GRIFFIN**, an
individual; and **DEVON WALDEN**, an individual,

       *Defendants*.

Case No. 3:23-cv-2303

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Seiko Epson Corporation, Epson America, Inc., and Epson Portland Inc., (collectively, "Epson"), for their Complaint herein, allege as follows:

## NATURE OF THE ACTION

1.      This is an action for patent infringement of United States Patent No. 8,794,749 ("the '749 patent"), and United States Patent No. 8,454,116 ("the '116 patent") (collectively, "the Epson Patents"), arising under the patent laws of the United States, 35 U.S.C. § 1 *et. seq*.

2.      The infringing products at issue are aftermarket ink cartridges for use with Epson printers, including "empty refillable ink cartridges," and aftermarket "circuit boards" for ink cartridges (sometimes referred to as "chips").  Over the years, Epson has brought numerous actions in various district courts as well as the United States International Trade Commission ("ITC" or "Commission") for infringement of its patents.  The ITC has issued two general exclusion orders (in ITC Inv. No. 337-TA-946 and ITC Inv. No. 337-TA-565) that prohibit the importation of ink cartridges that infringe certain Epson patents, including the two patents asserted in this case.

Epson's patent enforcement efforts have been widely publicized and reported by the aftermarket ink cartridge industry and by Epson itself.  As a result, the aftermarket ink cartridge industry is intimately familiar with the two ITC general exclusion orders and Epson's patents.  Players in the aftermarket ink cartridge industry know that importation and sale of ink cartridges for use with Epson printers may violate the ITC's general exclusion orders and infringe Epson's patents, including the '749 patent and '116 patent.  Epson gives notice of its patents, including the '749 patent and '116 patent, by virtual marking of its cartridges pursuant to 35 U.S.C. § 287(a). Nevertheless, infringers continue to import and sell ink cartridges that infringe Epson's patents, including the two patents asserted in this case, in flagrant violation of the ITC's general exclusion orders, United States patent law, and Epson's patent rights.

3.     Defendants in this case are willful infringers of Epson's patents, including the '749 patent and '116 patent and violators of at least the ITC's 337-TA-946 general exclusion order. Epson brings this action to recover money damages, for a preliminary and permanent injunction, and for other relief as set forth herein.

## THE PARTIES

4.     Plaintiff Seiko Epson Corporation ("Seiko Epson") is a corporation organized and existing under the laws of Japan.  Its principal place of business is located at 3-3-5 Owa Suwa-Shi Nagano-Ken, 392-8502, Japan.  Seiko Epson is the assignee of the '749 patent and the '116 patent.

5.     Plaintiff Epson America, Inc. ("Epson America") is a corporation organized and existing under the laws of the State of California.  Its principal place of business is located at 3131 Katella Avenue, Los Alamitos, California 90720.  As the North American sales, marketing and customer service affiliate of Seiko Epson, Epson America is the exclusive licensee of the Epson Patents for *distributing* in the United States Epson ink cartridges that embody the inventions contained in the '116 patent, including cartridges manufactured by Epson Portland Inc.

6.     Plaintiff Epson Portland Inc. ("Epson Portland") is a corporation organized and existing under the laws of the State of Oregon.  Its principal place of business is located at 3950 NE Aloclek Place, Hillsboro, Oregon 97124.  Epson Portland is the exclusive licensee of the Epson

Patents for *manufacturing* in the United States Epson ink cartridges that embody the inventions contained in the Epson Patents.

7.     Seiko Epson, Epson America and Epson Portland are sometimes referred to collectively herein as "Epson" or "Plaintiffs."

8.     Plaintiffs produce and sell ink cartridges that operate with Epson ink jet printers utilizing Epson's patented technology and designs in the United States and in this judicial district.

9.     On information and belief, and according to the Texas Secretary of State, defendant Weston Tees LLC ("Weston Tees") is a domestic limited liability company organized under the laws of the State of Texas.  Based on information and belief, and according to Weston Tees' filings with the Texas Secretary of State, an assumed name under which Weston Tees conducts business is "Texas Tees."  Based on information and belief, and according to Weston Tees's filings with the Texas Secretary of State, defendants Weston Griffin and Devon Walden are managers of the limited liability company and the registered agents for service of process.  According to Weston Tees's filings with the Texas Secretary of State, the principal place of business address, and address for service of process for Weston Tees is 9204 Westfork Trail, Fort Worth, Texas 76179, which according to Google Maps appears to be a residential property.

10.     On information and belief, and according to public records, defendant Weston Griffin, is an individual who resides in the State of Texas, is a manager, and registered agent for service of process for Weston Tees.  On information and belief, and according to public records, defendant Weston Griffin has a residence address of 206 Red Wolf Lane, Red Oak, Texas 75154, which according to Google Maps appears to be a residential property.  On information and belief, Weston Tees conducts at least some business from Weston Griffin's 206 Red Wolf Lane address.

11.     On information and belief, and according to public records, defendant Devon Walden, is an individual who resides in the State of Texas, is a manager and registered agent for service of process for Weston Tees.  On information and belief, and according to public records, defendant Devon Walden has a residence address of 714 Wolfe Run, Celeste, Texas 75423, which according to Google Maps appears to be a residential property.

12.     According to the Texas Secretary of State, Weston Tees's existence was forfeited on March 10, 2023.  For this reason under the Texas Tax Code (and for other reasons as detailed below), defendants Weston Griffin and Devon Walden are personally liable for the tortious conduct and related debts of defendant Weston Tees.

13.     Collectively, defendants Weston Tees, Weston Griffin, and Devon Walden are referred to herein as the "Defendants."

14.     On information and belief, Defendants have engaged in and continue to engage in making, manufacturing, offering to sell, and selling ink cartridges and chips that infringe the Epson Patents.

15.     On information and belief, Defendants act in concert with each other and with other entities and under fictitious business names to make, manufacture, distribute, offer to sell, and sell ink cartridges that infringe the Epson Patents.  On information and belief, Defendants are jointly and severally responsible for the infringements of the Epson Patents as they jointly operated and continue to jointly operate and manage the infringing enterprises, including Defendants, and related d/b/a entities, as a single enterprise by comingling resources, assets, operations, commercial activities, and/or they incur expenses and achieve profits jointly for the benefit of the combined enterprise, its owners and officers.

16.     On information and belief, Defendants conduct business in the United States at least under the names "Weston Tees," and "Texas Tees," and have and continue to conduct business via the Internet by offering for sale and selling cartridges and components thereof that infringe the Epson Patents under various seller names via their websites, including but not limited to tx-tees.com.  On information and belief, and according to the Defendants' website, they offer for sale and sell products that infringe the Epson Patents under the "Texas Tees" brand.  On information and belief, Defendants sell these branded products direct to consumers and end users.  On information and belief, defendants Weston Griffin and Devon Walden direct and control the activities of defendant Weston Tees LLC and Texas Tees, including but not limited to offering to sell, selling, and shipping of Defendants' branded products that infringe the Epson Patents.

4

17.   On information and belief, Defendants offer for sale, and sell ink cartridges and components thereof that infringe the Epson Patents complained of herein, including at least through their website tx-tees.com.

18.   For example, in the annotated screen capture below of Defendants' listing on their website tx-tees.com, visited October 4, 2023, Defendants offer for sale infringing ink cartridges for Epson printers and described the infringing ink cartridges as "Epson F2000/F2100 DTG Ink" and state "Texas Ink Cartridges for your Epson F2000 or F2100.  Our ink is IDENTICAL to the OEM Epson ink, so you'll get the EXACT same quality and experience." "The F-SERIES inks are designed as a direct replacement for the Epson F2000 and F2100 DTG printers," and "Ships from Texas!"  These infringing ink cartridges are shipped and sold by Defendants under their Texas Tees brand name and the products delivered comprise Texas Tees branded cartridges.



19.     As another example, in the annotated screen captures below of Defendants' listing on their tx-tees.com website, visited October 4, 2023, Defendants offer for sale infringing ink cartridges for Epson printers and described the infringing ink cartridges as "Epson F2000/F2100 Refillable Cartridges – Chips included" and "New Refillable Cartridges for your Epson F2000 or F2100.  You can now use BULK ink and save tons of money with the same amazing results.  Best results when using the SureColor F3070 ink.  This is the same ink as the F2000/F2100, but is much cheaper.  Please note that you will also need to buy additional chips for the cartridges.  They are super easy to replace.  See listing **here**."  These infringing ink cartridges are shipped and sold by



Defendants under their Texas Tees brand name and the products delivered comprise Texas Tees branded cartridges.

20. As another example, in the annotated screen capture below of Defendants' listing on their tx-tees.com website, visited October 4, 2023, Defendants offer for replacement chips for use with their refillable cartridges, and describe them as "Refillable ink cartridges for Epson printers and described the refillable ink cartridges as "Epson F2000/F2100 Chip" and "Replacement chip(s) for refillable cartridges."  These infringing chips are shipped and sold by Defendants under their Texas Tees brand name and the products delivered comprise Texas Tees branded chips.



21. On information and belief, most sales by Defendants include, but are not limited to "Texas Tees" branded infringing ink cartridges and chips.

22. Purchases of infringing ink cartridges and chips were made by Epson from Defendants' website listings discussed above. The infringing ink cartridges and chips were shipped by Defendants to Epson from Defendants' Texas address at 206 Red Wolf Lane, Red Oak, Texas 75154, the same address identified above in paragraph 13, as defendant Weston Griffin's residence address.

23. On information and belief, Defendants act in concert with each other and with other entities and under fictitious business names, including but not limited to "Texas Tees," to import, manufacture, distribute, offer for sale, and sell ink cartridges and chips that infringe the Epson Patents. On information and belief, Defendants are jointly and severally responsible for the infringements of the Epson Patents as they jointly operated and continue to jointly operate and manage the infringing enterprises, including Defendants, and any related d/b/a entities, as a single enterprise by comingling resources, assets, operations, commercial activities, and they incur expenses and achieve profits jointly for the benefit of the combined enterprise, its owners, officers, and members.

## JURISDICTION AND VENUE

24. The causes of action herein for patent infringement arise under the patent laws of the United States, 35 U.S.C. § 271. This Court has subject matter jurisdiction over the claims for patent infringement pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has personal jurisdiction of the Defendants at least because Defendants have committed acts of direct and indirect patent infringement in this judicial district and reside in this judicial district. Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c) and 1400(b).

## FIRST CLAIM FOR RELIEF
### (Patent Infringement—35 U.S.C. § 271)

## INFRINGEMENT OF U.S. PATENT NO. 8,794,749

25. Epson incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth at length here.

26. Epson owns all right, title, and interest in, including the right to sue thereon and the right to recover for infringement thereof, United States Patent No. 8,794,749 ("the '749 patent"), which was duly and legally issued to Seiko Epson by the United States Patent and Trademark Office on August 5, 2014. The '749 patent relates generally to ink cartridges for printers. Attached as Exhibit A to this Complaint is a true and correct copy of the '749 patent.

27. The '749 patent is valid and enforceable.

28. 55. On information and belief after conducting a reasonable investigation, Defendants have infringed and are infringing the '749 patent, as defined by at least one claim of the patent in violation of 35 U.S.C. § 271(a) by making, using, importing, offering to sell, and selling in this judicial district and elsewhere aftermarket ink cartridges that operate with Epson ink jet printers, including but not limited to ink cartridges and refillable ink cartridges and chips for use with at least the following Epson printers: Epson SureColor F2000 and Epson SureColor F2100, which includes, for example, ink cartridges and/or chips that are substitutes for genuine Epson ink cartridge model nos. T725A, T7251, T7252, T7253, and T7254, as well as others that are no more than colorably different from the foregoing (collectively, the "Accused '749 Ink Cartridges"). The specific models of Accused '749 Ink Cartridges identified above were obtained by Epson during its investigation leading to this Complaint from Defendants' online listings on their tx-tees.com website, as described above.

29. As a non-limiting example, set forth below is a claim chart with a description of Defendants' infringement of claim 1 of the '749 patent by the Accused '749 Ink Cartridges. The infringement is shown using a representative ink cartridge (an Accused Product that is a substitute

for genuine Epson Model No. T7251; Control No.[1] 230680) selected from among the Accused '749 Ink Cartridges purchased from Defendants that, for infringement analysis purposes, is representative of and represents all of Defendants' ink cartridges within the Accused '749 Ink Cartridges (i.e., the represented ink cartridges), including, but not limited to, the models identified above. The claim chart below refers to this ink cartridge as "the Representative '749 Ink Cartridge." The Representative '749 Ink Cartridge was designed for use in specific Epson printers, for example, the Epson SureColor F2100 printer ("the Representative '749 Epson Printer"), and for purposes of the analysis set forth herein, the Representative '749 Ink Cartridge was tested in the Representative '749 Epson Printer, as discussed in further detail in the claim chart below.

| Claim 1 of the '749 patent | Where found in the Accused '749 Ink Cartridges |
|---|---|
| [1a] A printing material container adapted to be attached to a printing apparatus by being inserted into the printing apparatus in an insertion direction, the printing apparatus having a print head and a plurality of apparatus-side electrical contact members, the printing material container comprising: | Each of the Accused '749 Ink Cartridges is or includes a printing material container adapted to be attached to an Epson ink jet printing apparatus. Each of the Accused '749 Ink Cartridges is inserted, in an insertion direction, into an Epson ink jet printer. All Epson ink jet printers that work with the Accused '749 Ink Cartridges have a print head and a plurality of printer-side (apparatus-side) electrical contact members.<br><br>These features are shown below using the Representative '749 Ink Cartridge.<br><br>The Representative '749 Ink Cartridge is adapted to be attached to the Representative '749 Epson Printer by being inserted in an insertion direction, as shown in the following photographs: |

---

[1] For identification purposes, a unique "control number" ("Control No.") has been assigned by Epson to each ink cartridge purchased by Epson from Defendants as part of Epson's investigation in support of this Complaint.



The Representative '749 Ink Cartridge



The Representative '749 Epson Printer

The following photograph depicts the insertion direction (blue arrow) in which the Representative '749 Ink Cartridge is inserted into the Representative '749 Epson Printer:



insertion direction

The following photograph shows the Representative '749 Ink Cartridge, a photo black-ink ink cartridge, attached in the Representative '749 Epson Printer after the cartridge has been inserted into the printer in the

insertion direction (the cyan, yellow, magenta and photo black ink cartridges, which are genuine Epson ink cartridges used to fill the remaining slots of the cartridge holder, can also be seen):



Representative '749 Ink Cartridge installed in the Representative '749 Epson Printer

The Epson ink jet printers (which includes the Representative '749 Epson Printer) that accept the Accused '749 Ink Cartridges (which includes the Representative '749 Ink Cartridge) each include a print head for printing and multiple printer-side electrical contact forming members for each ink cartridge accepted by the printer. These features are shown below for the Representative '749 Epson Printer's cartridge holder slot that accepts the Representative '749 Ink Cartridge, a photo black-ink ink cartridge (the printer's electrical contact members for the cyan, yellow, magenta, and photo black cartridges can also be seen in the left photo):



zoomed-in view of printer's electrical contact forming members (1 indicated; 9 shown)

Accordingly, the Accused '749 Ink Cartridges literally meet the preamble of claim 1 of the '749 patent.

| | |
|---|---|
| [1b] an ink supply opening, having an exit, adapted to supply ink from the ink cartridge to the printing apparatus; | Each of the Accused '749 Ink Cartridges comprises an ink supply opening having an exit. When attached, the ink supply opening of each of the Accused '749 Ink Cartridges is adapted to supply ink from the cartridge to the Epson ink jet printer that accepts the cartridge. The following photograph depicts the exit of the ink supply opening of the Representative '749 Ink Cartridge:<br><br><br>exit of ink supply opening<br><br>Accordingly, the Accused '749 Ink Cartridges literally meet this limitation of claim 1 of the '749 patent. |
| [1c] a low voltage electronic device adapted to receive and function with a low voltage, the low voltage electronic device comprising a memory device; | Each of the Accused '749 Ink Cartridges comprises a low voltage electronic device that comprises a memory device adapted to receive and function with a low voltage. The low voltage electronic device is an integrated circuit ("IC") chip located on the back of a printed circuit board that is mounted on a wall of the ink cartridge, as shown below in the Representative '749 Ink Cartridge:<br><br><br>printed circuit board (green) with low voltage electronic device located on back |

In addition, the presence of a low voltage electronic device (i.e., an IC chip comprising a memory device) is further confirmed through testing demonstrating that the Epson ink jet printers that accept the Accused '749 Ink Cartridges read the remaining ink level and other descriptive information about the ink cartridge from the ink cartridge's memory device, and display that information on the display screen of a connected computer and on the printer's display screen. The following photographs show the display of such information on the computer display screen and the printer's display screen for the Representative '749 Ink Cartridge, containing photo black ink, attached to the Representative '749 Epson Printer:



memory device shows, on the computer's display screen, the amount of photo black ink remaining in the Representative '749 Ink Cartridge

All Epson ink jet printers that accept the Accused '749 Ink Cartridges have similar circuitry and programming in terms of the voltages and signals they apply to their contact forming members and, consequently, to the corresponding contact portions of the Accused '749 Ink Cartridges (the contact portions are located on the gold-colored metallic terminals of the ink cartridge shown above).  In particular, Epson printers apply a maximum voltage of approximately 4 volts (a low voltage as compared to the high voltage discussed in the next limitation) to certain of their contact forming members that in turn correspond to certain of the contact portions of the Accused '749 Ink Cartridges that are connected to the low voltage electronic device comprising a memory device.  Consequently, the low voltage electronic device is adapted to receive and function with a low voltage.

| | |
|---|---|
| |  memory device shows, on the printer's display screen, the amount of photo black ink remaining in the Representative '749 Ink Cartridge<br><br>Accordingly, the Accused '749 Ink Cartridges literally meet this limitation of claim 1 of the '749 patent. |
| [1d] a high voltage electronic device adapted to receive and function with a high voltage, which is a higher voltage than the low voltage of the low voltage electronic device; and | Each of the Accused '749 Ink Cartridges comprises a high voltage electronic device that is adapted to receive and function with a voltage that is a higher voltage than the voltage of the low voltage electronic device. The high voltage electronic device may be, for example, a resistor, or one or more other coupled electronic components, that is/are capable of receiving and functioning with a high voltage. The high voltage electronic device is located on the back of a printed circuit board that is mounted on a wall of the ink cartridge, as shown below in the Representative '749 Ink Cartridge:<br><br> printed circuit board (green) with high voltage electronic device located on back<br><br>All Epson ink jet printers that accept the Accused '749 Ink Cartridges have similar circuitry and programming in terms of the voltages and signals they apply to their contact forming members and, consequently, to the corresponding contact portions of the Accused '749 Ink Cartridges (the contact portions are located on the gold |

| | |
|---|---|
| | terminals of the ink cartridge shown above). In particular, Epson printers apply a voltage of approximately 42 volts (a high voltage as compared to the low voltage of approximately 4 volts applied to the low voltage electronic device discussed in the preceding limitation) to two of their contact forming members that in turn correspond to two of the contact portions of the Accused '749 Ink Cartridges that are connected to the high voltage electronic device. Consequently, the high voltage electronic device is adapted to receive and function with a high voltage.<br><br>Accordingly, the Accused '749 Ink Cartridges literally meet this limitation of claim 1 of the '749 patent. |
| [1e] a plurality of container-side terminals having contact portions adapted and positioned to contact corresponding apparatus-side contact forming members so that electrical communication is enabled between the container and the printing apparatus, the contact portions of the terminals including a plurality of low voltage electronic device contact portions electrically coupled to the low voltage electronic device, and a first high voltage electronic device contact portion and a second high voltage electronic device contact portion, each electrically coupled to the high voltage electronic device, wherein: | Each of the Accused '749 Ink Cartridges comprises a plurality of container-side terminals that have contact portions. The contact portions are adapted and positioned on the cartridge so that, when the cartridge is attached to the printer, the contact portions of the cartridge's terminals contact corresponding printer-side contact forming members so that electrical communication is enabled between the cartridge and the printer.<br><br>As seen with respect to limitation 1c above, the terminals of the Accused '749 Ink Cartridges are the gold-colored metallic portions on the green printed circuit board. The contact portions are located on these gold-colored metallic portions. To confirm the location and arrangement of the terminals' contact portions, the terminals were marked with black ink, the cartridge was installed in and then removed from the printer (which caused the printers' contact forming members to leave scratch marks on the terminals thereby removing a portion of the black ink that was applied and therefore indicating the location of the contact portions), and the terminals were then photographed. For example, the terminals of the Representative '749 Ink Cartridge before marking with black ink is shown on the left and after marking with black ink is shown on the right: |

 

The resulting marks left by the printer's contact forming members on the terminals show the location and arrangement of the contact portions. These are indicated below with annotated yellow boxes superimposed on the terminals to indicate the location of the contact portions (there are a total of nine contact portions, with four contact portions in a top row and five contact portions in a bottom row):



The contact portions shown above correspond to their printer-side contact forming members so that electrical communication is enabled between the ink cartridge and the printer, e.g., so the printer can read remaining ink level and other information from the memory device as described above with respect to limitation 1c.

The above shown contact portions include a plurality of low voltage electronic device contact portions that are electrically coupled to the low voltage electronic device (specifically, the IC chip comprising a memory device). Each low voltage electronic device contact portion is electrically coupled by the terminal it appears on and by other circuitry to the memory device located on the back of the green printed circuit board. The following photograph of the Representative '749 Ink Cartridge shows the low voltage electronic device contact portions (there are five such low voltage electronic device contact portions, as indicated by superimposed blue boxes):



The contact portions of the Accused '749 Ink Cartridges' terminals also include first and second high voltage electronic device contact portions that are each electrically coupled to the high voltage electronic device discussed above with respect to limitation 1d. Each high voltage electronic device contact portion is electrically coupled by the terminal it appears on and by other circuitry to the high voltage electronic device on the back of the printed circuit board. The following photograph of the Representative '749 Ink Cartridge shows the high voltage electronic device contact portions (there are two such high voltage electronic device contact portions, as indicated by superimposed red boxes):



second high voltage electronic device contact portion

first high voltage electronic device contact portion

Accordingly, the Accused '749 Ink Cartridges literally meet this limitation of claim 1 of the '749 patent.

| [1f] the contact portions are arranged in a first row of contact portions and in a second row of contact portions, the first row of contact portions and the second row of contact portions extending in a row direction which is generally orthogonal to the insertion direction, | The contact portions of each of the Accused '749 Ink Cartridges are arranged in a first row of contact portions and in a second row of contact portions that both extend in a row direction which is generally orthogonal to the insertion direction. The following photographs of the Representative '749 Ink Cartridge show the first row and second row of contact portions extending in a row direction which is generally orthogonal to the insertion direction in which the Accused '749 Ink Cartridges are inserted into Epson ink jet printers that accept the Accused '749 Ink Cartridges. The right photo shows an enlarged and annotated view of the printed circuit board shown in the left photo. |

<table>
<tr>
<td></td>
<td>



first row of contact portions (red squares) and second row of contact portions (yellow squares), each extending in a row direction (green arrows) orthogonal to cartridge insertion direction (blue arrow)

Accordingly, the Accused '749 Ink Cartridges literally meet this limitation of claim 1 of the '749 patent.

</td>
</tr>
<tr>
<td>

[1g] the first row of contact portions is disposed at a location that is further in the insertion direction than the second row of contact portions, and,

</td>
<td>

In each of the Accused '749 Ink Cartridges, the first row of contact portions is disposed at a location that is further in the insertion direction than the second row of contact portions. The following photographs of the Representative '749 Ink Cartridge show the first row of contact portions (red boxes) disposed at a location that is further in the cartridge insertion direction than the second row of contact portions (yellow boxes) (i.e., the first row is deeper in the printer than the second row).



first row of contact portions (red squares) disposed further in insertion direction (blue arrow) than second row of contact portions (yellow squares)

</td>
</tr>
</table>

| | |
|---|---|
| | Accordingly, the Accused '749 Ink Cartridges literally meet this limitation of claim 1 of the '749 patent. |
| [1h] the first row of contact portions has a first end position and a second end position at opposite ends thereof, the first high voltage electronic device contact portion is disposed at the first end position of the first row of contact portions and the second high voltage electronic device contact portion is disposed at the second end position of the first row of contact portions. | In each of the Accused '749 Ink Cartridges, the first row of contact portions has a first end position and a second end position at opposite ends thereof, the first high voltage electronic device contact portion is disposed at the first end position of the first row of contact portions, and the second high voltage electronic device contact portion is disposed at the second end position of the first row of contact portions.<br><br>The following photograph of the Representative '749 Ink Cartridge shows the first and second high voltage contact portions disposed, respectively, at the first and second end positions at opposite ends of the first row of contact portions.<br><br><br><br>Accordingly, the Accused '749 Ink Cartridges literally meet this limitation of claim 1 of the '749 patent. |

30.     On information and belief after conducting a reasonable investigation, Defendants have and are actively, knowingly, and intentionally aiding and abetting and inducing infringement of the '749 patent in violation of 35 U.S.C. § 271(b) by non-parties, including end-users, despite Defendants' knowledge of the '749 patent.  This includes Defendants' offer for sale and sale of refillable ink cartridges and chips, as described and set forth in paragraphs 18-24 above, which constitutes inducement to infringe and contributory infringement at least of claim 1 of the '749 patent.

31.     On information and belief, Defendants had knowledge of the '749 patent prior to, or at least since, the filing and service of this complaint on Defendants.

32.     On information and belief, defendants Griffin Weston and Devon Walden, as the managers and members of defendant Weston Tees, each direct and control the infringing activities of defendant Weston Tees and Texas Tees, and have taken and continue to take active steps to encourage and induce defendant Weston Tees and Texas Tees to infringe by actively running and directing the businesses, including but not limited to being the principal decision makers regarding the promotion, advertising, and sale of products that infringe the '749 patent on Defendants' website, as discussed above in paragraphs 18-24.  Additionally, Defendants induce end-users to infringe the '749 patent to use the infringing products, and do so with knowledge of the '749 patent or willful blindness that the induced acts constitute infringement of the '749 patent, and with knowledge that when such acts are taken constitute infringement of the '749 patent.

33.     On information and belief, Defendants are contributing to the infringement of the '749 patent in violation of 35 U.S.C. § 271(c) by non-parties by offering to sell or selling within the United States or importing into the United States components of the patented inventions set forth in the '749 patent, including but not limited to refillable cartridges and chips.  The components constitute a material part of the inventions.  Defendants know that such components are especially made or especially adapted for use in an infringement of the '749 patent.  The components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

34.     For example, on information and belief, Defendants are making, offering to sell, selling, and importing into the United States, components (including refillable cartridges and chips) of ink cartridges that infringe the '749 patent, which constitute a material part of the inventions covered by one or more claims of the '749 patent, and are not staple articles or commodities of commerce suitable for noninfringing uses.  Defendants do so with awareness of the '749 patent, and knowledge that the components are especially made or especially adapted for use in an infringement of the '749 patent.

35.     By reason of Defendants' infringing activities, Epson has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

36.     Defendants' acts complained of herein have damaged and will continue to damage Epson irreparably.  Epson has no adequate remedy at law for these wrongs and injuries.  Epson is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '749 patent.

37.     Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge claimed in the '749 patent, and Defendants' conduct is, in every instance, without Epson's consent.

38.     On information and belief, Defendants' infringement has been and continues to be willful.

## SECOND CLAIM FOR RELIEF
### (Patent Infringement—35 U.S.C. § 271)

### INFRINGEMENT OF U.S. PATENT NO. 8,454,116

39.     Epson incorporates by reference each and every allegation contained in the above paragraphs as though fully set forth at length here.

40.     Epson owns all right, title, and interest in, including the right to sue thereon and the right to recover for infringement thereof, of the '116 patent, which was duly and legally issued to Seiko Epson by the United States Patent and Trademark Office on June 4, 2013.  The '116 patent relates generally to ink cartridges for printers.  Attached as Exhibit B to this Complaint is a true and correct copy of the '116 patent.  On April 26, 2022, certificate of correction 8,454,116 B2 was duly and legally issued to Seiko Epson by the United States Patent and Trademark Office.  A true and correct copy of the certificate of correction is appended to the end of the '116 patent as part of Exhibit B.  The original patent and the certificate of correction are collectively referred to herein as "the '116 patent."

41.     The '116 patent is valid and enforceable.

42.     On information and belief after conducting a reasonable investigation, Defendants have infringed and are infringing the '116 patent, as defined by at least one claim of the patent in violation of 35 U.S.C. § 271(a) by making, using, importing, offering to sell, and selling in this judicial district and elsewhere aftermarket ink cartridges, aftermarket refillable ink cartridges and aftermarket circuit boards for ink cartridges (sometimes referred to as "chips") for use with Epson printers, including but not limited to ink cartridges and chips for use with at least the following Epson printers: Epson SureColor F2000 and Epson SureColor F2100 – this includes, for example, ink cartridges and/or chips that are substitutes for genuine Epson ink cartridge model nos. T725100, T725200, T725300, T725400, and T725A00 – as well as others that are no more than colorably different from the foregoing (collectively, "the Accused '116 Products"). The specific models of the Accused '116 Products identified above were obtained by Epson during its investigation leading to this Complaint from Defendants' online listings on their tx-tees.com website described above.

43.     As a non-limiting example, set forth below is a claim chart with a description of Defendants' infringement of claim 18 of the '116 patent by the Accused '116 Products. The infringement is shown using a representative ink cartridge (an Accused Product that is a substitute for genuine Epson Model No. T7251; Control No. 230680) from among the Accused '116 Products purchased from Defendants that, for infringement analysis purposes, is representative of and represents all of Defendants' ink cartridges and chips within the Accused '116 Products (i.e., the represented ink cartridges and chips), including, but not limited to, the models identified above. The claim chart below refers to this ink cartridge as "the Representative Ink Cartridge." The Representative Ink Cartridge was designed for use in a specific Epson printer, the Epson SureColor F2100 printer ("the Representative Epson Printer"),[2] and for purposes of the analysis set forth herein, the Representative Ink Cartridge was tested in the Representative Epson Printer, as discussed in further detail in the claim chart below.

---

[2]  From a patent infringement analysis perspective, as set forth herein, the representative Epson Printer is representative of, and represents, all Epson printers that work with the Accused Products.

| Claim 18 of the '116 patent | Where found in the Accused '116 Products |
|---|---|
| [18a].  A circuit board mountable on a printing material container that is used in an ink jet printing apparatus, the ink jet printing apparatus having a print head and a plurality of apparatus-side contact forming members, the printing material container having a body and an ink supply opening, the ink supply opening having an exit on an exterior portion of the body and being adapted to supply ink from the printing material container to the printing apparatus, the circuit board comprising: | A circuit board is mounted on the Representative Ink Cartridge which is a printing material container that is used in an Epson ink jet printing apparatus (e.g., the Representative Epson Printer) that has a print head and a plurality of apparatus-side contact forming members.<br><br>The Representative Ink Cartridge has a body and an ink supply opening that has an exit on an exterior portion of the body and is adapted to supply ink to the ink jet printing apparatus (the Representative Epson Printer).<br><br>The following photos depict the circuit board (green with gold-colored metallic terminals) mounted on the Representative Ink Cartridge.<br><br><br><br>The Representative Ink Cartridge is used in any of the following Epson ink jet printer (printing apparatus) models: Epson SureColor F2000 and Epson SureColor F2100 (the "Epson Ink Jet Printers").<br><br>The following photo depicts the Epson SureColor F2100 ink jet printer.<br><br> |

| | |
|---|---|
| | The Epson Ink Jet Printers each include a print head for printing and multiple printer-side contact forming members.<br><br>The Representative Ink Cartridge has a body, as depicted below.<br><br><br>body<br><br>The Representative Ink Cartridge has an ink supply opening having an exit on an exterior portion of the body. When mounted, the ink supply opening is adapted to supply ink from the printing material container (i.e., the cartridge) to the Epson Ink Jet Printers.<br><br>The following photo depicts the exit of the Representative Ink Cartridge's ink supply opening.<br><br><br>exit of ink supply opening<br><br>Accordingly, the Representative Ink Cartridge literally meets the preamble of claim 18 of the '116 patent. |
| [18b] a memory device adapted to be driven by a memory driving voltage; | The circuit board mounted on the Representative Ink Cartridge comprises a memory device that is adapted to be driven by a memory driving voltage.<br>The following photo depicts the circuit board (green with gold-colored metallic terminals) mounted on the Representative Ink Cartridge. The memory device is located on the back of the circuit board and is not visible in this view. |

<table>
<tr><td></td><td>

All Epson Ink Jet Printers that accept the Representative Ink Cartridge have similar circuitry and programming in terms of the voltages and signals they apply to their contact forming members and, consequently, to the corresponding contact portions of the Representative Ink Cartridge (the contact portions are located on the gold-colored metallic terminals of the ink cartridge shown



circuit board (memory device on back)

above).  In particular, Epson printers apply a maximum voltage of approximately 4 volts (a low voltage as compared to the high voltage discussed in the next limitation) to certain of their contact forming members that in turn correspond to certain of the contact portions of the Representative Ink Cartridge that are connected to the memory.  Consequently, the memory device is adapted to be driven by a memory driving voltage.  This was confirmed through testing during the ITC 946 Investigation.

Accordingly, the Representative Ink Cartridge literally meets this limitation of claim 18 of the '116 patent.

</td></tr>
<tr><td>

[18c]  an electronic device adapted to receive a voltage higher than the memory driving voltage; and

</td><td>

The circuit board mounted on the Representative Ink Cartridge comprises an electronic device that is adapted to receive a voltage that is a higher voltage than the voltage of the memory device.  The electronic device that receives a higher voltage may be, for example, a resistor, or one or more other coupled electronic components, that is/are capable of receiving a high voltage.  The electronic device is located on the back of a printed circuit board that is mounted on a wall of the Representative Ink Cartridge shown in the above limitation.

In particular, Epson printers apply a voltage of approximately 42 volts (a high voltage as compared to the low voltage of approximately 4 volts applied to the

</td></tr>
</table>

| | |
|---|---|
| | memory device discussed in the preceding limitation) to two of their contact forming members that in turn correspond to two of the contact portions of the circuit board mounted on the Representative Ink Cartridge that are connected to the electronic device.  Consequently, the electronic device is adapted to receive and function with a high voltage.  This was confirmed through testing during the ITC 946 Investigation.<br><br>Accordingly, the Representative Ink Cartridge literally meets this limitation of claim 18 of the '116 patent. |
| [18d]  a plurality of terminals having contact portions adapted and positioned to contact corresponding apparatus-side contact forming members so that electrical communication is enabled with the ink jet printing apparatus, the contact portions of the terminals including a plurality of memory contact portions electrically coupled to the memory device, a first electronic device contact portion electrically coupled to the electronic device, a second electronic device contact portion electrically coupled to the electronic device, and a short detection contact portion positioned and arranged to electrically contact a contact forming member that itself is electrically coupled to a short detection circuit of the printing apparatus, wherein: | The circuit board mounted on the Representative Ink<br><br>Cartridge comprises a plurality of terminals that have contact portions.  The contact portions are adapted and positioned on the cartridge so that, when the cartridge is mounted on the printer, the contact portions of the cartridge's terminals contact corresponding printer-side contact forming members so that electrical communication is enabled with the printer.<br><br>As discussed at 18(a) and 18(b) *supra*, the terminals of the Representative Ink Cartridge's circuit board are the gold colored metallic portions on the green circuit board, reproduced in enlarged form below.<br><br>To determine the precise location of the terminals' contact portions, the following steps were taken: (1) black ink was applied to the terminals and the terminal arrangement photographed; (2) the Representative Ink Cartridge was installed in and removed from the Representative Epson Printer; and (3) the terminal arrangement was photographed.  The following photo shows the terminals after the application of black ink.<br><br><br><br>The step of installing and removing the cartridge from the printer, causes the printer's contact forming members |

(discussed at 18(a), *supra*) to leave scratch marks on the terminals thereby removing a portion of the applied black ink.  The following photo shows the terminals after the cartridge was installed and removed from the printer.



The contact portions of the circuit board's terminals are the most pronounced portions of the scratch marks (all of which contact corresponding printer-side contact forming members so that electrical communication is enabled with the printer, e.g., so that the printer can read remaining ink level and other information from the memory device as described in 18(b), *supra*).  The following annotated photo shows the location of the contact portions annotated by red circles.



The contact portions of the circuit board's terminals include a plurality of memory contact portions that are electrically coupled to the memory device.  Each memory contact portion is electrically coupled by the terminal it appears on to a "via," which is a through-hole (through the circuit board) that electrically couples the terminal to wiring on the back of the circuit board.  The wiring on the back of the circuit board electrically couples the via (and, therefore, the contact portion of the terminal) to an electrical lead of the chip containing the memory device mounted on the back of the circuit board.  In combination, these components electrically couple the memory contact portion to the memory device.

The following annotated photo depicts the five memory contact portions (in blue) located on the terminals on the front of the circuit board.



memory contact portions

The contact portions of the circuit board's terminals include a first and second electronic device contact portion that are each electrically coupled to the electronic device (specifically, the resistor). Each electronic device contact portion is electrically coupled by the terminal it appears on to a via that electrically couples the terminal to wiring located on the back of the circuit board. The wiring on the back of the circuit board electrically couples the via (and, therefore, the contact portion of the terminal) to an electrical lead of the resistor mounted on the back of the circuit board. In combination, these components electrically couple the first and second electronic device contact portions to the resistor.

The following annotated photo depicts the first and second electronic device contact portions (in red) located on the terminals on the front of the circuit board.



first electronic device contact portion    second electronic device contact portion

The contact portions of the circuit board's terminals include a short detection contact portion that is positioned and arranged to electrically contact a contact forming member of the Epson Ink Jet Printers that is itself electrically coupled to a short detection circuit of the printers.

The following photo depicts the short detection contact portion (in green).



short detection contact portion

Moreover, all Epson ink jet printers that accept the Representative Ink Cartridge have similar circuitry and programming in terms of the operation of the short detection contact portion. In particular, when the printers are operated while the short detection contact portion is electrically shorted to the second electronic device contact portion, the printers stop the receipt of the voltage higher than the memory driving voltage by the second electronic device contact portion, and display an error message to the user on the display screen of a connected computer and on the printer display screen (if the printer has a display screen). This was confirmed

| | |
|---|---|
| | through testing during the ITC 946 Investigation.<br><br>Accordingly, the Representative Ink Cartridge literally meets this limitation of claim 18 of the '116 patent. |
| [18e] the contact portions are arranged so that, when the terminal arrangement is viewed from the vantage of the contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the ink jet printing apparatus, and with the printing material container oriented with the exit of the ink supply opening facing downwards, the contact portion farthest to the left is the first electronic device contact portion, the contact portion that is farthest to the right is the second electronic device contact portion, the contact portion that is second farthest to the right is the short detection contact portion, and the memory contact portions are located to the left of the short detection contact portion and to the right of the first electronic device contact portion. | The contact portions of the Representative Ink Cartridge's circuit board are arranged so that, when the terminal arrangement is viewed from the vantage of the printer's contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the printer, and with the ink cartridge oriented so that the exit of the ink supply opening faces downwards, then the contact portion farthest to the left is the first electronic device contact portion, the contact portion that is farthest to the right is the second electronic device contact portion, the contact portion that is second farthest to the right is a short detection contact portion, and the memory contact portions are located to the left of the short detection contact portion and to the right of the first electronic device contact portion.<br><br>The following photo depicts the terminal arrangement when it is viewed from the vantage of the printer's contact forming members, with the terminals oriented as if in contact with the contact forming members so that electrical communication is enabled with the printer, and with the printing material container oriented so that the exit of the ink supply opening faces downwards.<br><br><br><br>terminal arrangement viewed from vantage of printer's contact forming members . . . with the exit of the ink supply opening facing downwards |

| | |
|---|---|
| | The following photo depicts the arrangement of the contact portions when the terminal arrangement is viewed as described above.<br><br><br><br>Accordingly, the Representative Ink Cartridge literally meets this limitation of claim 18 of the '116 patent. |

44.     On information and belief after conducting a reasonable investigation, Defendants have and are actively, knowingly, and intentionally aiding and abetting and inducing infringement of the '116 patent in violation of 35 U.S.C. § 271(b) by non-parties, including end-users, despite Defendants' knowledge of the '116 patent.  This includes Defendants' offer for sale and sale of refillable ink cartridges and chips, as described and set forth in paragraphs 18-24 above, which constitutes inducement to infringe and contributory infringement at least of claim 9 of the '116 patent.

45.     On information and belief, Defendants had knowledge of the '116 patent prior to, or at least since the filing and service of this complaint on Defendants.

46.     On information and belief, defendants Griffin Weston and Devon Walden, as the managers and members of defendant Weston Tees, each direct and control the infringing activities of defendant Weston Tees and Texas Tees, and have taken and continue to take active steps to encourage and induce defendant Weston Tees and Texas Tees to infringe by actively running and directing the businesses, including but not limited to being the principal decision makers regarding the promotion, advertising, and sale of products that infringe the '116 patent on Defendants'

website, as discussed above in paragraphs 18-24.  Additionally, Defendants induce end-users to infringe the '116 patent to use the infringing products, and do so with knowledge of the '116 patent or willful blindness that the induced acts constitute infringement of the '116 patent, and with knowledge that when such acts are taken constitute infringement of the '116 patent.

47.     On information and belief, Defendants are contributing to the infringement of the '116 patent in violation of 35 U.S.C. § 271(c) by non-parties by offering to sell or selling within the United States or importing into the United States components of the patented inventions set forth in the '116 patent, including but not limited to refillable cartridges and chips.  The components constitute a material part of the inventions.  Defendants know that such components are especially made or especially adapted for use in an infringement of the '116 patent.  The components are not a staple article or commodity of commerce suitable for substantial noninfringing use.

48.     For example, on information and belief, Defendants are making, offering to sell, selling, and importing into the United States, components (including refillable cartridges and chips) of ink cartridges that infringe the '116 patent, which constitute a material part of the inventions covered by one or more claims of the '116 patent, and are not staple articles or commodities of commerce suitable for noninfringing uses.  Defendants do so with awareness of the '116 patent, and knowledge that the components are especially made or especially adapted for use in an infringement of the '116 patent.

49.     By reason of Defendants' infringing activities, Epson has suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

50.     Defendants' acts complained of herein have damaged and will continue to damage Epson irreparably.  Epson has no adequate remedy at law for these wrongs and injuries.  Epson is therefore entitled to a preliminary and permanent injunction restraining and enjoining Defendants and their agents, servants, and employees, and all persons acting thereunder, in concert with, or on their behalf, from infringing the claims of the '116 patent.

51.     Defendants are not licensed or otherwise authorized to make, use, import, sell, or offer to sell any ink cartridge claimed in the '116 patent, and Defendants' conduct is, in every instance, without Epson's consent.

52.     On information and belief, Defendants' infringement has been and continues to be willful.

## PRAYER FOR RELIEF

WHEREFORE, Epson prays for judgment against Defendants as follows:

A.      That the Epson Patents are valid and enforceable;

B.      That Defendants have infringed and are infringing the Epson Patents;

C.      That such infringement of the Epson Patents was and is willful;

D.      That Defendants and their subsidiaries, affiliates, parents, successors, assigns, officers, agents, representatives, servants, and employees, and all persons in active concert or participation with them, be preliminarily and permanently enjoined from continued infringement of the Epson Patents;

E.      That Defendants be ordered to pay Epson its damages caused by Defendants' infringement of the Epson Patents and that such damages be trebled, together with interest thereon;

F.      That this case be declared exceptional pursuant to 35 U.S.C. § 285 and that Epson be awarded its reasonable attorneys' fees, litigation expenses and expert witness fees, and costs; and

G.      That Epson have such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs request a trial by jury of all issues so triable.

DATED:  October 18, 2023

By */s/ Victoria Forson*

**Victoria Forson**
Texas Bar No. 24118212
victoria.forson@klgates.com
K&L Gates LLP
1717 Main Street, Suite 2800
Dallas, TX 75201
Tel: (214) 939-5500
Fax: (214) 939-5849

**Tigran Guledjian**
California Bar No. 207613  (*pro hac vice* to be filed)
tigranguledjian@quinnemanuel.com
**Richard H. Doss**
California Bar No. 204078  (*pro hac vice* to be filed)
richarddoss@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: (213) 443-3000

**Henry M. Pogorzelski**
Texas Bar No. 24007852
henry.pogorzelski@klgates.com
K&L Gates LLP
2801 Via Fortuna, Suite 650
Austin, Texas 78746
Tel: (512) 482-6800
Fax: (512) 482-6859

*Attorneys for Plaintiffs Seiko Epson Corporation,*
*Epson America, Inc., and Epson Portland Inc.*